## MINNESOTA ACADEMY OF CHIROPRACTORS, INC., AND OTHERS v. STATE BOARD OF CHIROPRACTIC EXAMINERS AND OTHERS.

169 N. W. (2d) 26.

June 6, 1969—Nos. 41302, 41303, 41304, 41305, 41306.

*Douglas M. Head,* Attorney General, and *Richard W. Johnson,* Special Counsel to Minnesota State Board of Chiropractic Examiners, for appellants.

*Wayne A. Wentworth* and *Barry Lazarus,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.

OTIS, JUSTICE

Two independent but related matters are consolidated for review. The first is an appeal by the Minnesota State Board of Chiropractic Examiners from a judgment of the district court and from an order denying a new trial in an action brought by the Minnesota Academy of Chiropractors, Inc., in which the trial court held that a regulation of the board pertaining to testimonial advertising was invalid. The second appeal is from an order denying a new trial and a judgment of the district court setting aside an order of the board which revoked the licenses of four chiropractors, Drs. George H. Olson, Lee Charnstrom, Donald E. Shelton, and Norman L. Poquette, who were found to have violated Minn. St. 148.10, subd. 1(1), prohibiting any advertisement "wherein the term 'cure' or 'guarantee to cure' or similar terms are used."

We have determined that the regulation in question is valid as applied to the facts of this case and the judgments of the district court are therefore reversed.

The statute on which the license revocations were predicated and to which the disputed regulation refers is as follows (Minn. St. 148.10, subd. 1[1]):

"The state board of chiropractic examiners may refuse to grant, or may revoke, a license to practice chiropractic, or may cause the name of a person licensed to be removed from the records in the office of the clerk of the district court for:

"(1) the publishing or distributing, or causing to be published or distributed, in newspapers, magazines, directories, pamphlets, posters, cards, or in any other manner by advertisement, wherein the term 'cure' or 'guarantee to cure' or similar terms are used; which is hereby declared to be fraudulent and misleading to the general public."

In October 1960, the Minnesota State Board of Chiropractic Examiners conducted a public hearing for the purpose of promulgating and adopting interpretative rules to avoid violations of § 148.10.

Representatives of both the Minnesota Chiropractic Association and the Minnesota Academy of Chiropractors, Inc., were heard. As part of its presentation the Association offered a code of ethics which included the following:

"The use of case histories and testimonials in advertisements is not permitted as they carry with them the implication that the conditions described in the advertisement have been or will be cured by the practitioner."

It was pointed out that professional journals such as The Chiropractic Educator and National Healthways drew heavily on testimonial advertising. Concern was expressed over the impact of forbidding such material. Nevertheless, on December 8, 1960, the board adopted the following regulation which respondents attack as invalid:

"Advertisements are designed to appeal to and obtain the attention of the public and are not designed, paid for or published with a view to close analysis by the reader at whose attention they are aimed.

"The law prohibits the use of the terms 'CURE' or 'GUARANTEE TO CURE' or similar terms, and declares such to be fraudulent and misleading to the general public.

"*The use of testimonials, whether singly or in groups; or summaries of types of treatment or examples of treatment as used in the advertisers' office carry with them an implication that the conditions described in the advertisement have been or will be cured by the practitioner and are fraudulent and misleading to the general public.*

"The advertising by any means of Chiropractic practice or treatment or advice in which untruthful, improbable, misleading or impossible statements are made, is obviously contrary to the law." (Italics supplied.)

It is the italicized portion of the regulation which is the subject of this litigation.

The declaratory judgment action was commenced in December 1966. The relief sought included a judgment that the board had exceeded its authority by the adoption of interpretative rules and

regulations; that the regulations were unconstitutional; and that they did not have the effect of law. The revocation proceedings were commenced in March 1967 by the issuance of citations alleging that the chiropractors in question, contrary to § 148.10, subd. 1(1), "did, at various times, during the year 1967, cause to be distributed publications containing testimonials thereby implying that the conditions described in the testimonials have been, or will be, cured by" such chiropractors.

In April 1967, the board accorded the chiropractors a hearing following which, in May, it made findings, conclusions, and orders of revocation with respect to each of them. It found that each had caused to be published and distributed a pamphlet prohibited by § 148.10 in that the pamphlet implied that the chiropractor could "cure" the conditions described therein. The board indicated it would consider applications for reinstatement within 30 days.

Appeals to the district court from the revocation orders were consolidated with the declaratory judgment suit. Both matters were submitted on documentary evidence without additional testimony. In support of its orders holding the regulation regarding testimonials to be invalid and setting aside the license revocations, the trial court filed a memorandum setting forth the reasons for its decision. It held that the statute "does not prohibit advertising which implies that a cure of a particular ailment was effected in a certain named instance by some named or unnamed chiropractor who did not sponsor the advertisement." The court further stated:

"* * * There is nothing fraudulent or misleading in a statement that some other chiropractor did effect a cure of an ailment unless it be proven that in fact such a cure was not effected by that other chiropractor."

The court felt that a representation that treatment had effected the cure of a particular person was no assurance that a cure could be effected by the advertising chiropractor. Finally, the court ruled that the action of the board in revoking the licenses was arbitrary and capricious.

Whether the board exceeded its authority in prohibiting *all* testimonial advertising, we need not decide. We have no difficulty in holding that the testimonials distributed by the chiropractors whose licenses were here revoked did, in fact, violate Minn. St. 148.10, subd. 1(1). Clearly, the terms used in the testimonial advertising before us can only be construed as representing that chiropractic treatment elsewhere has cured specifically enumerated ailments and that the advertising doctor by the application of similar treatment is also able to cure those ailments.

At the hearing before the Board of Examiners, the chiropractors whose licenses were revoked testified that they mailed to patients and distributed from door to door a total of approximately 5,000 pamphlets. On the top of the first page of each was the picture, name, and address of the particular chiropractor. All four distributed pamphlets with the following testimonials:

(1) A testimonial headed "Able to Walk Again—After Chiropractic," signed by a patient before a notary in Pueblo, Colorado, certified that doctors had tried everything in treating an injured daughter "to no avail." After six or seven treatments by a named chiropractor, "she was on her own" and able to walk again.

(2) A patient in Astoria, New York, certified before a notary that he had a herniated disc which doctors advised him would require an operation. After 3 months of treatment by a named chiropractor, he was able to return to work lifting heavy pieces of iron. He stated: "I've always believed in miracles, and this, I think, was really one."

(3) A patient in California certified before a notary that after a series of adjustments by a named chiropractor her trifacial neuralgia began to clear up. Her previous treatment with the family physician and a nerve specialist had been unsuccessful.

(4) A patient in New York certified before a notary that after treatment with a named chiropractor her headaches, which had been getting progressively more severe, "are a thing of the past." In addition, the patient testified that the same chiropractor corrected her daughter's distorted walking.

(5) A patient in California certified before a notary that she had been under the care of five doctors to treat an asthma condition which grew steadily worse. After treatment by a named chiropractor, "the attacks cleared up, and I am now free from attacks of asthma."

(6) A testimonial from Texas headed "Epilepsy—Seizures End Under Chiropractic" certified before a notary that a son afflicted with convulsions due to what doctors had described as incurable epilepsy was treated by a named chiropractor and "has never had another epileptic seizure since his first adjustment" although use of drugs was discontinued.

Dr. Poquette used additional testimonials. One certified that after chiropractic adjustments for double vision a patient was "able to see as well as ever." The other testimonial certified that as a result of chiropractic adjustment the patient's eczema cleared entirely in 2 months' time, and that, after she developed blood poisoning, "[c]hiropractic saved the day for me" and "the condition cleared" following the first adjustment.

Testimonials used by Dr. Shelton certified that under a chiropractor's care constipation, hemorrhoids, headaches, and backaches all disappeared; colitis cleared up; high blood pressure returned to normal; blackouts, which averaged ten a week, disappeared completely; and the patient no longer suffered from severe headaches.

Respondents argue that the Board of Chiropractic Examiners was adopting substantive law in prohibiting testimonials without legislative or constitutional power so to do. They point out that under Minn. St. 15.0412, subd. 1, an agency "may promulgate reasonable substantive rules and regulations and may amend, suspend or repeal the same, but such action shall not exceed the powers vested in the agency by statute." Respondents reason that the mere fact one chiropractor has given relief is not a guarantee that the chiropractor who distributes the testimonial promises a cure. It is contended that had the legislature intended to prohibit testimonials it could have expressly done so. Testimonials have been traditional long before the adoption of § 148.10. It is further argued that chiropractors are prohibited from

performing surgery, practicing obstetrics, or prescribing drugs, and the only purpose of the testimonials is to call public attention to the fields of medicine in which they are permitted to practice. Testimonials are intended to show what ailments can be treated but not necessarily what can be cured. Finally, respondents take the position that the express purpose of the statute is to prevent fraudulent and misleading advertising and that there is no evidence the facts recited in the various testimonials are untrue.

In resolving the issue of whether the regulation prohibiting testimonials is valid, we are confronted with a problem of semantics. Were the board to enforce the regulation where a testimonial does not expressly or by implication use terms which are similar to "cure" or "guarantee to cure," it might well exceed its authority. However, the regulation itself limits the prohibition to testimonials which imply that the conditions described in the advertisement have been, or will be, cured by the practitioner. Absent such implication, there is no reason to believe the board will invoke the regulation.

Turning to the testimonials under consideration, it would be naive to assume that these respondents incurred the expense of advertising the skill and competence of other practitioners in widely separated areas of the country if the public were not to infer that respondents were similarly endowed with the gift of healing. We do not accept their claim that these testimonials merely advertised the type of afflictions which they were qualified to treat. Almost without exception the testimonials go far beyond simply certifying improvement or relief. Invariably the patient's ailment has been treated by one or more doctors of medicine, often specialists, but the condition has worsened. After chiropractic treatment the patient is "able to walk again"; a "miracle" has occurred; the condition has "cleared up," "disappeared," "ended," or is "a thing of the past"; or the condition has returned to normal and there has not been a recurrence for a specified period of time.

There can be little doubt that the expressions used come within the dictionary definition of the word "cure" which is "HEAL a: to restore to health, soundness, or normality * * * b: to bring about

recovery from." Webster's Third New International Dictionary (1961) p. 555. Having established that a variety of ailments have been successfully treated and cured by chiropractic adjustment elsewhere, the testimonials invite prospective patients in the community to seek similar relief and hold out equal promise of success.

We do not adopt respondents' contention that the testimonials were not fraudulent or misleading unless the board has proved that the case histories recited were false. The chiropractors testified that they knew neither the patients nor the doctors referred to in the testimonials nor did they know whether chiropractic treatment had in fact corrected the patients' problems. The chiropractors relied entirely on the integrity of the organization which published and distributed the testimonials.

Whether true or false, to the extent that the testimonial may be construed as a promise to cure, it is declared by statute to be fraudulent and misleading. Consequently, we hold that the word "testimonials" as used in the board's regulation refers to testimonials which are expressly or by implication promises to cure or guarantee to cure, and that the advertisements here for consideration violate the statute and the regulation construing it. Accordingly, the decision of the lower court holding the regulation invalid and setting aside the revocation of the licenses of respondents Olson, Charnstrom, Shelton, and Poquette is reversed.

Reversed.

Upon Petition for Reargument and Appeal
From Clerk's Taxation of Costs and Disbursements
On July 8, 1969, the following order was filed:

Per Curiam.

It is Ordered that the petition for reargument be and hereby is denied.

It is Further Ordered that the costs and disbursements of the appellant, taxed on June 18, 1969, in the amount of $670.44, be and hereby are disallowed.