**UNITED STATES of America, Plaintiff,**

v.

**Raymond PEÑA–BONILLA, Defendant.**

No. Crim. 97–291(SEC).

United States District Court,
D. Puerto Rico.

March 10, 1998.

Dorothy Ferrer–Del–Valle, Asst. U.S. Atty., Hato Rey, PR, for Plaintiff.

Laura Maldonado, Asst. Fed. Public Defender, Hato Rey, PR, for Defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is defendant Raymond Peña–Bonilla's Motion to Suppress Identification Testimony **(Docket # 14)**, filed on February 3, 1998. The Government, after requesting an extension of time to respond **(Docket # 15)**, which is now **MOOT**, filed its reply to the motion to suppress **(Docket # 16)** on February 20, 1998. In order to elucidate the issues posed by defendant in his motion to suppress, the Court held an evidentiary hearing on March 4, 1998 **(Minutes of Proceedings, Docket # 18) (Transcript of Proceedings, Docket # 20)**. Parties were given until March 9, 1998 to file simultaneous briefs to supplement their respective arguments regarding the motion, which they did. **(Government's Supplemental Brief, Docket # 21; Defendant's Supplemental Brief, Docket # 22)** For the reasons stated below in this Opinion and Order, defendant's Motion to Suppress Identification Testimony **(Docket # 14)** is **DENIED**.

### Factual Background

The events giving rise to the above-captioned case occurred on November 20, 1997 when Mr. Aníbal López–Nárvaez, the driver of a truck picking up and delivering mail for a private company, was held up at gunpoint in his truck en route to the St. Just Post Office in Trujillo Alto, Puerto Rico. According to Mr. López–Nárvaez's testimony at the evidentiary hearing, it was around 5:50 p.m. when the assailant entered the vehicle, and still daylight out. When he was driving past a car dealership located on 65th Infantry Avenue in Trujillo Alto, Mr. López–Nárvaez saw that there was a party going on at the car dealership. He also spotted two individuals standing in the corner in front of the car dealership. It was then, while stopped at a traffic light, that one of the two men standing at the corner of the street approached the truck and pointed the pistol at Mr. López–Nárvaez's ribcage.

After the assailant entered the vehicle, Mr. López–Nárvaez was then forced to drive to the afore-mentioned post office, and forced to give his assailant some bags containing cash and checks, otherwise known as the "remesa" or remittance bags. All in all, the assailant took a total of about $39,000 in cash and checks. After being in close proximity (less than seven feet) of the unmasked assailant for a total of ten to fifteen minutes, Mr. López–Nárvaez was pistol-whipped by the assailant and locked in the post office warehouse. Mr. López–Nárvaez testified at the suppression hearing that he saw the assailant face to face, that he "saw his physical appearance" because he was "looking at him directly."

Upon the assailant's departure from the scene, Mr. López–Nárvaez was approached by two persons who worked at the eyeglass shop next door to the post office, who then proceeded to call Mr. López–Nárvaez's supervisor as well as the Puerto Rico Police Department. The Puerto Rico police arrived at the scene shortly thereafter, and Mr. López–Nárvaez gave a description of the assailant to the first police officers on the scene. Mr. López–Nárvaez described the assailant as short, "cano" (i.e. with light-colored hair), young, about twenty years old, with light-colored eyes, fair-skinned (white), and wearing a brown-striped beige shirt, brown pants, and brown boot-like shoes. He repeated the same description of the assailant to Special Postal Inspector Eliezer Julián who subsequently arrived at the scene and questioned the victim.

The following day, on November 21, 1997 Mr. López–Nárvaez was taken to the San Agustín Police Precinct so that he could look through some photo albums to see if he recognized his assailant. After looking through several albums, between eight and ten according to the testimony, each containing about fifty pages with several pictures on each page, Mr. López–Nárvaez, without being prompted by any of the officers, identified a photograph of the defendant. The only instructions he was given was to look through the photo albums and try to identify the man who assaulted him the previous afternoon. Mr. López–Nárvaez identified defendant's photograph and stated that he was certain that the man in the picture was his assailant.

Upon defendant's arrest on December 18, 1997, Mr. López–Nárvaez was taken to the same police precinct so that he could observe a line-up and see if he could identify his assailant. The lineup consisted of the defendant and four "fillers," all whom closely resembled defendant physically, and all of whom were wearing similar shirts and either blue jeans or beige pants. Upon viewing the line-up, Mr. López–Nárvaez immediately identified the defendant as his assailant. The defendant was then placed under arrest.

The defendant is seeking to suppress the line-up identification, and consequently, any in-court identification testimony, because he claims that the line-up in which the defendant was identified was impermissibly suggestive because the defendant's pants were "soiled," calling undue attention to the defendant as the assailant. In addition, the defendant claims that the identification was not reliable because there are differences between the victim's initial description of the assailant to the police and the defendant's actual physical characteristics.

**Applicable Law—Motions to Suppress Identification**

■ In deciding whether a particular identification of a defendant should be suppressed, courts utilize a two-pronged test, as established by the United States Supreme Court in *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 383–83, 34 L.Ed.2d 401 (1972). First, the Court must determine whether the identification procedure used was impermissibly suggestive. Secondly, if the identification procedure is determined to be impermissibly suggestive, then the Court must determine if "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.* The *Biggers* court listed the following factors to be considered in deciding the second prong of the inquiry:

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by

the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id. See also United States v. Watson,* 76 F.3d 4, 7, fn. 1 (1st Cir.1996); *United States v. Guzman–Rivera,* 990 F.2d 681, 683 (1st Cir. 1993); *United States v. de Jesus–Rios,* 990 F.2d 672, 677 (1st Cir.1993); *United States v. Gray,* 958 F.2d 9, 14 (1st Cir.1992); *United States v. Maguire,* 918 F.2d 254, 263 (1st Cir.1990); *United States v. Bouthot,* 878 F.2d 1506, 1514 (1st Cir.1989).

The First Circuit Court of Appeals has held that "[b]efore excluding identification evidence, the court must be persuaded that there was 'a very substantial likelihood of irreparable misidentification.' " *de Jesus–Rios,* 990 F.2d at 677, *quoting Bouthot,* 878 F.2d at 1514, *quoting Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). While the "problems with evaluating and dangers in relying upon eyewitness testimony are well known and endlessly debated..." *Gullick v. Perrin,* 669 F.2d 1, 4 (1st Cir.1981), "it is only in extraordinary cases that identification evidence should be withheld from the jury." *Maguire,* 918 F.2d at 264, *quoting United States v. Turner,* 892 F.2d 11, 14 (1st Cir. 1989).[1]

The Supreme Court has found that the weighing of identification evidence is primarily the province of the jury, absent extraordinary ·circumstances indicating its unreliability: "We are content to rely upon the good sense and judgment of American juries ... Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2253–54, 53 L.Ed.2d 140 (1977), *quoted in Maguire,* 918 F.2d at 264.

If the Court finds that the first prong of the test is not met, i .e., that the identification procedure used was not impermissibly suggestive, then the Court need not address the second prong of the test, whether the identification was nevertheless reliable. *See, e.g., Guzman–Rivera,* 990 F.2d at 683 ("Since we do not find the identification impermissibly suggestive, we need not reach the likelihood of misidentification prong of the test.") In light of the above-cited caselaw, we turn to analyze the identification procedures utilized in this case, and in the alternative, if the identification procedures are found to be impermissibly suggestive, whether the identification was nevertheless reliable under the *Biggers* test.

**Analysis**

The defendant argues that the identification procedures utilized to identify him as the assailant were impermissibly suggestive based solely on the fact that during the lineup defendant's pants were "soiled", thus attracting attention to him as the assailant. We find defendant's arguments to be unpersuasive, holding that the identification procedures used by the police in this case, the photo album selection as well as the subsequent lineup, were not impermissibly suggestive.

■ First, defendant has not attacked the validity of the initial identification of the defendant by the victim. As stated above, Mr. López–Nárvaez selected defendant's picture from among several hundred that he viewed. After looking through several photo albums, without any prompting by the agents at the police station, the victim clearly identified the defendant as his assailant. He did not identify any "false positives" and at no time displayed even the slightest doubt that he was identifying the right man. In light of the above, we thus find that the first identification of the defendant by the victim, through the viewing of photo albums, was valid.

■ Second, we must address defendant's claim that the fact that defendant's pants were "soiled" attracted attention to the de-

---

1. The defendant, in his brief supplementing the motion to dismiss, cited two articles attacking the reliability of eyewitness testimony. However, in light of the applicable Supreme Court and First Circuit precedent we will not engage in the debate over the· inherent reliability of eyewitness testimony. As stated by the First Circuit in *Gullick,* 669 F.2d at 4, fn. 8, "[W]e decline the [defendant's] invitation to reexamine the difficult questions raised in the literature concerning the reliability of eyewitness testimony."

fendant as the assailant, and therefore somehow tainted the lineup. Upon viewing a photograph of the lineup in question, as was viewed by the victim, (Defendant's Exhibit C at the Motion to Suppress Hearing), we find that any stains on defendant's pants are negligible. The state of defendant's pants, as compared to the "fillers" in the lineup is not significantly different; two of the fillers were also wearing pants that were somewhat faded or stained. Furthermore, Mr. López–Nárvaez testified at the suppression hearing that he had not noticed defendant's pants or the fact that they were stained. Considering the fact that all of the lineup participants shared similar physical characteristics, were wearing similar shirts and shoes, and no prompting was made of the victim during the identification process, it cannot be said that the lineup was impermissibly suggestive. At most, the defendant's "soiled" pants may be the sort of "minimal suggestivity" that "may be cured at trial" through the use of cross-examination. *Maguire*, 918 F.2d at 264.

Because we have found that the identification procedures used in this case were not impermissibly suggestive, we need not reach the second prong of the *Biggers* test. However, we shall undertake the second prong analysis using the five *Biggers* factors in order to determine whether Mr. López–Nárvaez's identification of the defendant was reliable.

The defendant attacks the reliability of the victim's identification primarily on the third factor, the accuracy of the witness' prior description. Defendant attacks the accuracy of the victim's description, insofar as defendant has dark hair, is not short, is thirty years old instead of twenty, and has several tattoos on his right arm not contained in the victim's description to the police. He also claims that both the witness' opportunity to view the defendant during the crime and his degree of attention during the crime were affected by the fact that he was driving and was also trying to signal to the employees of the eyeglass shop that something was wrong.

We shall first address defendant's argument regarding the accuracy of the victim's prior description of the assailant. It is undisputed that defendant's hair is dark brown, rather than "cano" or light brown. In addition, defendant is taller than the 5'6" indicated by the witness; he is not short for the average Puerto Rican man. Furthermore, defendant does have two tattoos in his right hand. the hand used by the assailant to wield the pistol at the victim, and the victim did not mention the tattoos in his description of the assailant to the police. Finally, defendant was at the time of the assault, and currently still is, thirty years old, instead of the twenty described by the victim.

Apart from the hair color, which may look lighter or darker depending on the amount of light under which it is viewed, the discrepancies between the victim's description of the assailant and defendant's actual physical characteristics can be reconciled. First, while defendant is taller than what Mr. López–Nárvaez described, the Government introduced evidence that Mr. López–Nárvaez is an unusually tall man, about 6'3" or 6'4"; as such, even a taller than average man such as the defendant might appear short in relation to him. Second, while the victim did not mention any tattoos when describing the assailant to the police, that omission might be explained by his obvious focus on the pistol being held by the assailant, rather than on any markings in the assailant's arms. Finally, even though defendant is thirty years old, rather than twenty, he is clearly a youthful-looking man. Therefore, the actual age difference is not so wide as to seriously undermine the victim's identification.

We find that although there are some differences between Mr. López–Nárvaez's description to the police and the defendant's actual physical characteristics, these are not so significant to produce a finding of unreliability that would preclude a jury examination of the evidence. *See United States v. Lau*, 828 F.2d 871, 875–76 (1st Cir.1987) (holding that inconsistencies between witness' description and defendant's physical characteristics do not render the evidence unreliable so as to prevent the jury from hearing it). As the First Circuit found in *Maguire*, 918 F.2d at 264, "[c]ross examination before a jury can establish reliability of identification ..." Furthermore,

under our adversary system of justice, cross-examination has always been considered a most effective way to ascertain the truth. We decline in these cases to hold that the Due Process Clause of the Fourteenth Amendment inevitably requires that abandonment of the time-honored process of cross-examination as the device best suited to determine the trustworthiness of testimonial evidence.

*Gullick,* 669 F.2d at 5, *quoting Watkins v. Sowders,* 449 U.S. 341, 349, 101 S.Ct. 654, 659, 66 L.Ed.2d 549 (1981). Defense counsel aptly and vigorously cross-examined Mr. López–Nárvaez at the suppression hearing. Any potential weaknesses in his identification of the defendant can be fully brought to the attention of the jury at trial through cross-examination.

Moreover, we find that defendant's arguments regarding the victim's level of attention and his opportunity to view the criminal at the time of the crime are inapposite in light of applicable Supreme Court and First Circuit precedent. *See Lau,* 828 F.2d at 875, and the cases cited therein (holding identifications reliable where witnesses had between one to five minutes to see defendant). *Cf. Bouthot,* 878 F.2d at 1513 (holding identification unreliable where witness had observed defendant for approximately thirty seconds, from a moving car, and from no closer than ten feet). Mr. López–Nárvaez testified that he saw the assailant face to face and spent about fifteen minutes in his presence. The assailant made no attempt to hide his face; even with the stress associated with the situation and the fact that he was driving the truck for part of the time, we find that the victim had a clear opportunity to observe the assailant closely. Therefore, we find that both the witness' opportunity to observe the criminal, as well as the degree of attention of the witness, weigh in favor of a finding of reliability of this identification.

Finally, the last two factors of the *Biggers* test, the level of certainty demonstrated at the confrontation, and the time between crime and the confrontation, also weigh in favor of a finding of reliability of the victim's identification of the defendant. Mr. López–Nárvaez confidently identified the defendant

from the numerous photo albums he perused, as well as from the lineup. He stated that he was certain that the man he identified in the picture and in the lineup was the assailant. At no time did he waver from his conviction or identify anyone other than the defendant. The brief time between the crime and the confrontation also weighs heavily in favor of a finding of reliability. The victim's first identification of the defendant came the morning after the assault. The lineup identification was less than a month later. The victim's recollection of the assailant was very fresh at the moment that he identified the defendant.

In short, four of the five *Biggers* factors weigh heavily in favor of a finding of reliability of the identification. There are some discrepancies between the victim's initial description of the assailant and the defendant's actual physical characteristics. However, these are not so great as to render the identification unreliable, obligating the suppression of the testimony. Any potential divergence between the prior description and the defendant's physical characteristics can be effectively brought out in the cross-examination of the witness. These are not extraordinary circumstances that warrant usurping the jury's role in evaluating the evidence; as such the identification testimony must be allowed.

**Conclusion**

Pursuant to the above discussion, defendant Raymond Peña–Bonilla's Motion to Suppress Identification (**Docket # 14**) is **DENIED.** We find that the identification procedures utilized in this case were not impermissibly suggestive. Even if the fact that defendant's pants in the lineup were somewhat stained could render the process impermissibly suggestive, we find that the identification testimony is nevertheless reliable under the five-factor *Biggers* test. Therefore, we hold that the victim's identification of the defendant from the photographs as well as from the line-up should not be suppressed and should thus be presented to the jury. Because we find that the out-of-court identifications of the defendant are admissible, any in-court identification of the

defendant by Mr. López–Nárvaez is also admissible. *Maguire*, 918 F.2d at 265.

**SO ORDERED.**