**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 5 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

M. TERRENCE REVO,

       Plaintiff - Appellee,

vs.

DISCIPLINARY BOARD OF THE
SUPREME COURT FOR THE STATE
OF NEW MEXICO, LUIS G.
STELZNER, Chairman; CHRISTINA
ARMIJO, LINDA S. BLOOM, FELIX
BRIONES, JR., MICHAEL D.
BUSTAMANTE, CHARLES W.
DANIELS, PATRICIA B. MURRAY,
LARRY RAMIREZ, WARREN F.
REYNOLDS, ALEX ROMERO, JOHN
H. SCHULKE, SARAH M.
SINGLETON, members, in their official
capacities,

       Defendants - Appellants.

No. 96-2000

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-92-764-JC)

---

Andrew G. Schultz, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, NM (Bruce
Hall, Albuquerque, NM, Stephen Durkovich, Albuquerque, NM, and Damon Ely,
Albuquerque, NM, with him on the brief) for Defendants - Appellants.

Charles R. Peifer, Browning & Peifer, P.A., Albuquerque, NM (John Newman Carr,
Albuquerque, NM, with him on the brief) for Plaintiff - Appellee.

Before KELLY, HOLLOWAY and WEIS,[*] Circuit Judges.

KELLY, Circuit Judge.

Defendants, members of the Disciplinary Board of the Supreme Court of New Mexico (the Board), appeal from the district court's order enjoining enforcement of Rule 16-701(C)(4) of the New Mexico Rules of Professional Conduct.[1]  Rule 16-701(C)(4) bans all attorney direct mail advertisements to personal injury victims and family members of wrongful death victims, unless the recipient of the solicitation is a relative of the attorney sending the letter or has had a prior personal, business or professional

_____

[*] The Honorable Joseph F. Weis, Jr., Senior Circuit Judge for the Third Circuit Court of Appeals, sitting by designation.

[1]  16-701.  Communications concerning a lawyer's services.
. . . .
C.  Prohibited Solicitations.  A lawyer may not send or permit to be sent a written communication to a prospective client for the purpose of obtaining professional employment . . . if:
. . . .
(4)  the written communication or other solicitation, except as provided in Paragraph A of Rule 16-703 [allowing contact with prospective clients who are relatives or with whom the lawyer has a prior personal, business or professional relationship], concerns an action for personal injury or wrongful death or otherwise relates to an accident involving the person to whom the communication is addressed or a relative of that person.

S.C.R.A. 16-701(C)(4) (Michie 1995 Repl.) (as amended, effective August 1, 1992).

relationship with that attorney. The district court found the rule unconstitutional, in violation of the First Amendment and the Equal Protection Clause. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm. We grant the Board's unopposed motion to withdraw portions of its appendix not before the district court.

Background

Plaintiff, M. Terrence Revo, is a personal injury lawyer who practices in Albuquerque, New Mexico. He has been a member in good standing of the New Mexico and New York bars since 1978 and 1976 respectively. Following the United States Supreme Court's decision in <u>Shapero v. Kentucky Bar Ass'n</u>, 486 U.S. 466 (1988), Mr. Revo began advertising by means of direct mail letters sent to persons injured in automobile accidents. He continued to do so until 1992, when the Supreme Court of New Mexico enacted Rule 16-701(C)(4), amending its Rules of Professional Conduct to ban all direct mail advertising to personal injury victims and family members of wrongful death victims. S.C.R.A. 16-701 (1995 Repl.) (as amended, effective August 1, 1992). At the same time that it adopted this complete ban on direct mail to accident victims, New Mexico adopted a procedure for screening all other lawyer advertisements. S.C.R.A. 16-707 (1995 Repl.) (as amended, effective August 1, 1992). By its terms, this screening procedure applies to all direct mail advertisements except those to personal injury victims, which are specifically banned by Rule 16-701(C)(4).

Mr. Revo sought a declaratory judgment that the ban was unconstitutional on First Amendment and Equal Protection grounds, as applied to him and the solicitation letter he proposes to send.[2] After a one-week trial, both parties submitted thousands of additional

---

[2] The advertising letter at issue, as set forth in Mr. Revo's second amended complaint, is as follows:

[Date]                                    "LAWYER ADVERTISEMENT"

[Name and Address]

Dear [Title and Name]:

The Albuquerque Police [State Police] Department records show that you were recently involved in an auto accident. Unfortunately, such accidents are an all too common fact of life and can cause serious concern. I understand that dealing with injuries, emergency rooms, medical bills, lost earnings, damaged autos, rental cars, and insurance adjusters can be difficult and frustrating.

In our system of legal justice, the injured person has certain rights and protections under the law. It is important that you know about your rights before deciding what to do.

I have been an attorney for more than 16 years. I invite you to make an appointment for a free initial consultation and evaluation of your case. We will do our best to answer all your questions and you are under no obligation to hire my firm.

I accept personal injury cases on a contingency fee basis, which means that my fee is based upon a percentage of your total recovery, before costs are deducted. Regardless of the outcome, the client will bear the expenses of the case. Some exceptions may apply. I have found that the earlier I become involved in a case, the more I can do on your behalf, therefore, I invite you to call today.

If you have already retained the services of an attorney, I hope that your

pages of depositions and other documentary evidence for the court's further consideration, and the district court took the matter under advisement. Before rendering a decision, the district judge died. The case was assigned to another district judge, who gave the parties the option under Fed. R. Civ. P. 52 of retrying any part of the case. Waiving their right to retry the case, the parties submitted it on the record. The district court held that New Mexico's blanket ban on direct mail advertising is an unconstitutional violation of Mr. Revo's First Amendment and Equal Protection rights, and permanently enjoined its enforcement. The Board now appeals.

### Discussion

In a First Amendment case, we have an obligation to make an independent examination of the whole record in order to make sure that the speech regulation does not constitute a forbidden intrusion on the field of free expression. Melton v. City of Oklahoma City, 879 F.2d 706, 713 (10th Cir. 1989) (citing Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 499 (1984)). Because of this obligation, and because of the unique procedural posture of this case, the Board contends that we owe no

---

case will proceed well and that you will have a positive outcome. If you are not represented, then I ask you to think about what is at stake, now and for the future. If we can help please call.

Respectfully,

M. Terrence Revo

deference to the district court's findings and that we should substitute our own independent review of the evidence. Ordinarily, our review of the district court's findings of fact is under the clearly erroneous standard, even if those findings were based on documentary evidence and a cold record. Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985); United States v. Little, 60 F.3d 708, 714 n.5 (10th Cir. 1995). This case, however, turns primarily on the application of the First Amendment to the facts surrounding New Mexico's ban. Although the district court also held that the ban violated the Equal Protection Clause, we need not address that holding because the trial record makes it clear that Mr. Revo's equal protection claim was subsumed in his First Amendment claim. We review the district court's findings of constitutional fact and its ultimate conclusions of constitutional law de novo. Robinson v. City of Edmond, 68 F.3d 1226, 1230 n.7 (10th Cir. 1995); Yates v. Commissioner, 924 F.2d 967, 969 (10th Cir. 1991).

Lawyer advertising is commercial speech and is accorded an intermediate measure of First Amendment protection. Florida Bar v. Went For It, Inc., 115 S. Ct. 2371, 2375 (1995). Government restrictions on commercial speech, such as New Mexico's ban on personal injury direct mail advertising, are analyzed under the framework set forth in Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557 (1980). As a threshold inquiry under Central Hudson, we must determine whether the particular advertisement is protected speech—*i.e.*, whether it concerns lawful activity and is not

misleading.  Id. at 563, 566; Went For It, 115 S. Ct. at 2376.  If not, the speech may be freely regulated.  Protected commercial speech may also be regulated, but only if the government can show that (1) it has a substantial state interest in regulating the speech, (2) the regulation directly and materially advances that interest, and (3) the regulation is no more extensive than necessary to serve the interest.  Central Hudson, 447 U.S. at 564-65; Went For It, 115 S. Ct. at 2376.

The operative facts in this case are not in dispute, although the parties contest how those facts should be characterized.  At issue here is whether, under the Central Hudson framework, New Mexico's ban is a constitutionally permissible restriction on the commercial speech of lawyer advertising.

There is no question that advertising legal services concerns lawful activity.  The Board argues, however, that the letters Mr. Revo sent to accident victims are misleading.  Our review of the record does not support this overbroad contention.  As early as 1988, the Board's Chief Disciplinary Counsel admitted that Mr. Revo's letters were "carefully worded to avoid creating false impressions."  Aplt. App. at 271.  Also, the Board admitted that it had not received a single complaint from any recipient of any of Mr. Revo's letters stating that the letters were false or misleading, were unfairly coercive, or caused them to enter an attorney-client relationship unwillingly or without adequate information.  Aplt. App. at 375-76.

The Board contends that direct mail solicitation letters such as those sent by Mr. Revo are inherently misleading, and therefore may be freely restricted. The Board suggests that direct mail letters to personal injury victims inevitably convey a false message that soliciting lawyers are more experienced, tougher, more skillful, and better qualified than non-soliciting lawyers, notwithstanding the fact that the letters themselves make no reference to those attributes. According to the Board, therefore, the mere sending of any letter to poor and uneducated accident victims (the group the Board claims is specifically targeted by soliciting attorneys) carries with it the notion that the lawyer is superbly able to represent their interests—a notion that is inherently misleading because only unqualified shysters send these letters and because their targeted clients are not sophisticated enough to know that they are being preyed upon. The Board ignores the fact that the letters are sent to all accident victims, without regard to their financial well-being. The fact that different segments of the population may choose different means of selecting lawyers is not proof that those persons choosing lawyers from direct mail solicitation are somehow less capable of making intelligent decisions.

In support of its arguments, the Board points to four soliciting attorneys who it claims are either unqualified to represent personal injury clients or who do not act in the best interests of such clients. According to the Board, these attorneys represent, for all practical purposes, the total population of soliciting personal injury attorneys in New Mexico. Assuming the Board is correct in its characterizations, the fact that these four

attorneys may mislead their potential clients is not proof that the letters themselves are inherently misleading. For a particular mode of communication to be inherently misleading, it must be incapable of being presented in a way that is not deceptive. In re R.M.J., 455 U.S. 191, 203 (1982). The Board offers no proof that some other qualified lawyer who could superbly represent personal injury victims would nevertheless be misleading potential clients simply by sending a direct mail solicitation. In addition, the Board offers no evidence that anyone was actually deceived by Mr. Revo's letters. Given the absence of any evidence of actual deception, the Board's "concern about the possibility of deception in hypothetical cases is not sufficient to rebut the constitutional presumption favoring disclosure over concealment." Peel v. Attorney Disciplinary Comm'n of Ill., 496 U.S. 91, 111 (1990); Ibanez v. Florida Dep't of Bus. & Prof. Regulation, 114 S. Ct. 2084, 2090 (1994).

Having determined that the solicitation letters in question are protected commercial speech, we now turn to the first element of the Central Hudson test. "'Unlike rational basis review, the Central Hudson standard does not permit us to supplant the precise interests put forward by the State with other suppositions.'" Went For It, 115 S. Ct. at 2376 (quoting Edenfield v. Fane, 507 U.S. 761, 768 (1993)). The Board asserts that it has a substantial interest in maintaining the public's respect for the legal system—respect which may be eroded by personal injury solicitation letters. The Supreme Court found this interest substantial in Went For It. 115 S. Ct. at 2376. The

- 9 -

Board also has a substantial interest in protecting the privacy of accident victims.  <u>Id.</u>;

<u>Edenfield</u>, 507 U.S. at 769.  <u>But see</u> <u>Shapero v. Kentucky Bar Assoc.</u>, 486 U.S. 466, 475-

76 (1988).

The heart of the <u>Central Hudson</u> test as it applies to New Mexico's ban is in the

remaining two elements, which can be characterized as the "fit" between the ban and the

interests it is designed to serve.  The second element asks whether the ban directly and

materially advances the asserted state interest.  In <u>Central Hudson</u>, the Court explained

this inquiry by stating that "the regulation may not be sustained if it provides only

ineffective or remote support for the government's purpose."  447 U.S. at 564.  The

Board's burden "is not satisfied by mere speculation and conjecture; rather, a

governmental body seeking to sustain a restriction on commercial speech must

demonstrate that the harms it recites are real and that its restriction will in fact alleviate

them to a material degree."  <u>Went For It</u>, 115 S. Ct. at 2377 (citations omitted).

According to the Board, direct mail solicitation by personal injury lawyers

"engenders the public perception of ambulance chasing, which has been shown to

encourage overreaching and underrepresentation, and which invades the privacy and

offends the sensibilities of those most grievously injured."  Aplt. Reply Brief at 11.  The

first part of this argument goes to New Mexico's interest in upholding the integrity of the

legal profession.  To demonstrate that the harms it recites are real, the Board proffers its

"record," consisting primarily of testimony about the bad practices of soliciting attorneys,

along with the results of a survey it conducted of potential direct mail recipients. The Board cites examples of illegal tie-in relationships between soliciting attorneys and chiropractors, in which the attorneys and chiropractors end up receiving inflated fees at the expense of their clients. The Board's record shows examples of gross underrepresentation of clients by some of the soliciting attorneys, including missing filing deadlines and attempting to settle soft-tissue claims while ignoring obvious and much more serious head injuries. We agree with the Board that such harms are real, and we do not doubt that some of the sharp practices associated with solicitation contribute to the denigration of the legal profession. Though it may sometimes appear otherwise, the practice of law remains a profession, not just a ticket to entrepreneurship. In addition, the lack of correlation between solicitation and the quality of legal services may be lost on those most in need of protection.

There is, however, more to the inquiry. Not only must the harms be real, but the ban must also be able to address those harms in a material way. Mr. Revo claims that the overwhelming majority of the harms identified by the Board are the direct result of unethical practices of two New Mexico attorneys who have unethical referral relationships with two New Mexico chiropractors, and about whom the Board had already received numerous complaints prior to enacting its ban. One of these attorneys receives only five percent of his clients through direct mail solicitation, and the other receives only twenty-five percent of his clients through direct mail. Appellee's Brief at 14, 15 (citing

Tr. at 226-27, 289). Thus, a blanket ban on all direct mail solicitation by personal injury lawyers in New Mexico will not protect the other seventy-five to ninety-five percent of the clients harmed by these two lawyers. Nor will it protect the infinitely greater number of clients who are served by other lawyers who might someday participate in direct mail solicitation, even accepting the Board's mighty assumption that all attorneys who advertise by direct mail are by definition incompetent to represent their clients, regardless of whether the clients were obtained by such solicitation. The ban, therefore, "provides only ineffective or remote support for the [Board's] purpose" of protecting the integrity of the bar by eliminating these bad practices. Central Hudson, 447 U.S. at 564.

Regarding its asserted interest in protecting the privacy of direct mail recipients, the Board's record also identifies the real harm suffered by accident victims who receive solicitation letters right after suffering an injury or the loss of a loved one. The Court in Went For It distinguished a long line of precedent and held that the receipt of offensive printed material, even though not misleading, could constitute a constitutionally impermissible privacy invasion. 115 S. Ct. at 2378-79 (distinguishing Shapero, 486 U.S. at 476; Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 72 (1983); and Cohen v. California, 403 U.S. 15, 21 (1971)). The Court pointed out that with its thirty-day restriction on direct mail solicitation to accident victims, Florida was protecting the "privacy and tranquility" of its citizens "while wounds are still open," and "forestall[ing] the outrage and irritation with the state-licensed legal profession that the practice of direct

- 12 -

solicitation only days after the accident has engendered." Went For It, 115 S. Ct. at 2379. In so holding, the Court emphasized the importance of Florida's anecdotal record which detailed the harms suffered by accident victims who received solicitation letters so soon after suffering their injuries. Id. at 2377-78.

In this case, New Mexico argues that because it has developed a similar record, its restriction on direct mail solicitation must also be upheld. In so arguing, however, the Board has condensed the application of the final two elements of the Central Hudson test into one. Not only must the harms asserted by the state be real and capable of redress by the state's chosen regulation, but also the regulation must be no broader than necessary to serve the state's interest. Central Hudson, 447 U.S. at 565. This final element of the test is New Mexico's undoing.

New Mexico's ban does directly and materially advance its asserted interest in protecting the privacy of accident victims—it eliminates the receipt of these letters altogether. We are unable to conclude, however, that New Mexico's chosen restriction is sufficiently narrowly tailored to withstand constitutional scrutiny.

In upholding the "fit" of Florida's thirty-day ban, the Court pointed out that the respondents' challenge that the ban was too broad "would have force if the Bar's rule were not *limited to a brief period* and if there were not many other ways for injured Floridians to learn about the availability of legal representation *during that time*." 115 S. Ct. at 2380 (emphasis added). In concluding that the thirty-day ban was constitutional,

the Court said "[t]he palliative devised by the Bar to address these harms is narrow both in scope *and in duration*." Id. at 2381 (emphasis added). The Court distinguished Florida's restriction from the one struck down in Shapero, which was a "broad ban on *all* direct mail solicitations, whatever the time frame and whoever the recipient." Id. 2378 (emphasis in original). The New Mexico ban is a complete ban on all personal injury direct mail solicitation, no matter what the time frame, and as such is as broad in scope and duration as it can possibly be.

The Board argues that "New Mexico's ban is proportional in that it effects only four lawyers." Aplt. Reply Brief at 11. According to the Board, therefore, the ban merely "prohibit[s] the advertising activities of this marginal group of attorneys . . ." Id. Mr. Revo contends that the ban affects at least eight New Mexico personal injury attorneys who were using direct mail solicitation at the time it was enacted. In fact, it affects every New Mexico attorney who might ever decide to expand his practice to include personal injury clients or who might decide that direct mail is a good way to reach such clients, without any showing that such attorneys have engaged in or are necessarily even likely to engage in the unethical practices identified by the Board. "[M]erely because targeted, direct-mail solicitation presents lawyers with opportunities for isolated abuses or mistakes does not justify a total ban on that mode of protected commercial speech." Shapero, 486 U.S. at 476 (citing In re R.M.J., 455 U.S. at 203).

There are several less-burdensome alternatives available to the Board—alternatives which the Board has not shown would be insufficient to materially address its concerns. While it is true that the "least restrictive means test has no role in the commercial speech context," Went For It, 115 S. Ct. at 2380, "the existence of 'numerous and obvious less-burdensome alternatives to the restriction on commercial speech . . . is certainly a relevant consideration in determining whether the "fit" between ends and means is reasonable.'" Id. (quoting Cincinnati v. Discovery Network, Inc., 113 S. Ct. 1505, 1510 n.13 (1993)). The Board has not shown why subjecting personal injury direct mail letters to a screening process would not protect against misleading potential clients. All other attorney direct mail solicitation letters are subjected to this screening process, so there can be no argument that such a requirement would be a regulatory burden, particularly in light of the Board's claim that only four attorneys even use such letters. Also, if, as Mr. Revo claims, the real harms identified by the Board are the result of the unethical practices of a handful of attorneys, the existing regulations (or enhanced enforcement of those regulations) for disciplining attorneys for violations of the Rules of Professional Conduct should adequately address those harms. Finally, the Board has not shown why a thirty-day ban similar to Florida's would not adequately address the harms it has identified.

The Board argues that the harms it has identified are without time limits, and that grieving does not fit into a neat thirty-day cycle. This may be true, but the Constitution

favors disclosure of information, even in the commercial speech context. The Board has shown that it has significant interests in protecting the emotional well-being of members of the public and in assuring that individuals responding to direct-mail solicitations will be represented by competent attorneys. The Board has failed, however, to demonstrate that its interests outweigh the public's right to at some point receive truthful and non-misleading written advertising that is plainly and conspicuously marked "Advertising Material" or "Lawyer Advertising."

As applied to Mr. Revo and the letter he proposes to send to personal injury victims, New Mexico Supreme Court Rule 16-701(C)(4) is an unconstitutional violation of the First Amendment. New Mexico's complete ban on attorney direct mail solicitation to personal injury victims is not narrowly tailored to serve the Board's interests, and is therefore unenforceable. See Board of Trustees, State Univ. of N.Y. v. Fox, 492 U.S. 469, 483 (1988) (although as applied holding on commercial speech restriction does not assure a defense to all others whose own commercial solicitation may be constitutionally proscribed, rationale of narrow-tailoring holding may be so broad as to render statute effectively unenforceable).

AFFIRMED.