Ronald A. BELL, et al., Plaintiffs,

v.

The LEGAL ADVERTISING COMMITTEE, et al., Defendants.

No. Civ. 95–0471 BB/LCS.

United States District Court, D. New Mexico.

March 19, 1998.

Victor R. Marshall, Cindi L. Pearlman, Victor R. Marshall & Assoc., Albuquerque, NM, for Plaintiffs.

Paul M. Schneider, Legal Bureau/RMD, State of N.M., Santa Fe, NM, for Defendants.

## OPINION

BLACK, District Judge.

THIS MATTER comes before the Court for consideration of Plaintiffs' Motion for Preliminary and Permanent Injunction (Doc. 102); Plaintiffs' Application for Preliminary Approval for Payment of More Than One Attorney (Doc. 104); Defendants' Motion to Dismiss Claim for Declaratory and Injunctive Relief (Doc. 105); and a motion by Plaintiffs to strike a brief filed recently by Defendants. The Court has reviewed the submissions of the parties and the relevant law and, for the reasons set forth below, finds that the motion to dismiss should be GRANTED in part and DENIED in part; that the application for approval of more than one attorney is premature; and that the motion for preliminary

and permanent injunction should be held in abeyance pending discovery and a hearing on the merits.

### Facts and Procedural History

Plaintiff Ron Bell is a New Mexico licensed attorney who has run afoul of the attorney-advertising rules promulgated by the New Mexico Supreme Court. Bell ran a number of advertisements utilizing various media, including television and billboards. As a result, he became the subject of a disciplinary proceeding during which he was accused of violating both procedural and substantive aspects of the advertising rules. While the disciplinary proceedings were pending Bell filed this action alleging violations of his First Amendment rights. Rather than interfere with the ongoing state disciplinary process, this Court applied the *Younger* doctrine [1] and abstained from hearing the case, pending completion of the state proceedings. Those proceedings resulted in the New Mexico Supreme Court suspending Bell's license to practice law for one year.[2]

After the New Mexico Supreme Court completed its action on Bell's case, he returned to this Court asking for relief. He continues to maintain that his First Amendment rights were violated and are being violated by actions taken by Defendants, and especially by the legal advertising committee (LAC), an administrative body charged by the New Mexico Supreme Court with performing the first level of review of advertisements disseminated by New Mexico attorneys. Bell seeks declaratory and injunctive relief in the form of an order allowing him to run twenty-one different advertisements that have been acted on by the LAC. Defendants have moved to dismiss Bell's action, raising several arguments in support of their motion.

Plaintiff's advertisements and legal claims can be grouped into several different categories that lead to the application of different legal principles. First, of the twenty-one ads he seeks to run, there are two that have been approved for content by the LAC, but which were part of the disciplinary proceedings only because Bell had not submitted them to the LAC in a timely manner. Second, eight other ads were rejected by the LAC and were part of the disciplinary proceedings on the basis of both substantive and procedural violations of the advertising rules. Third, eleven ads have been rejected by the LAC but were not part of the disciplinary proceedings brought against Bell. Instead, Bell apparently withdrew those ads from circulation following the LAC's negative evaluation. Fourth, Bell raises a general challenge to the advertising rules insofar as the rules forbid all testimonials and endorsements in advertisements. Finally, Bell brings another general challenge to the procedural requirements of the advertising rules, which require that an attorney submit proposed ads to the LAC for review at the same time as the attorney submits the ad to the newspaper, television station, or other media in which the ad will run. The Court will address each of the above categories of claims separately.

### Two Advertisements Approved by the LAC

At oral argument counsel for Bell stated that two of his advertisements, titled "Rehab" and "20 M.P.H.," were approved for content by the LAC. That being the case, there does not appear to be any reason Bell cannot run the advertisements, and his substantive claims with regard to those advertisements appear to be moot. *See Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 724 (6th Cir.) (issue is moot when nothing remains to be enjoined or declared improper), *cert. denied*, 508 U.S. 940, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993). The Court will therefore grant Defendants' motion to dismiss insofar as it specifically concerns those advertisements.

### Eight Advertisements Addressed in Disciplinary Proceedings

■ By requesting declaratory relief to the effect that Bell can run these advertisements without fear of discipline, Bell is essentially making a collateral attack on the New Mexico Supreme Court's decision to

---

1. *Younger v. Harris*, 401 U.S. 37, 401 U.S. 37, 27 L.Ed.2d 669 (1971); *see Middlesex County, Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (holding that *Younger* abstention doctrine applies to state bar disciplinary proceedings).

2. The Supreme Court did stay the suspension on condition that Bell obey the Court's rules during the period of suspension, and Bell has apparently successfully concluded his probationary period.

discipline him for running the ads. Such an attack, which constitutes at least a partial review of the action taken by the state court, would violate the basic tenets of federalism and is not permissible. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486, 103 S.Ct. 1303, 1316–17, 75 L.Ed.2d 206 (1983) (federal district courts do not have jurisdiction over challenges to state-court decisions arising out of specific disciplinary proceedings, although they do have authority to hear general challenges to state bar rules); *Razatos v. Colorado Supreme Court,* 746 F.2d 1429, 1432 (10th Cir.1984) (same). The fact that Bell's collateral attack includes a claim that he has a First Amendment right to run these advertisements does not grant this Court the power to review the state court's decision. *Feldman* (review of state-court decisions that are alleged to be unconstitutional may be had only in United States Supreme Court, not federal district court); *Wu v. State Bar of California,* 953 F.Supp. 315, 321 (C.D.Cal.1997) (*Feldman* strongly counsels against federal district court assuming jurisdiction over such a collateral attack).

Bell attempts to avoid application of the *Feldman* rule by maintaining that the New Mexico Supreme Court did not address the constitutional issues he now attempts to raise in this Court. This argument is of no aid to Bell, because his own actions caused the Supreme Court to refrain from addressing those issues. During the disciplinary proceedings, Bell filed what is known as an *England* reservation,[3] attempting to reserve his federal constitutional claims for decision by this court. Bell continued to rely on his *England* reservation before the New Mexico Supreme Court, despite the fact that this Court, in abstaining from this case on *Younger* grounds, informed Bell that the *England* doctrine does not apply in cases involving the *Younger* doctrine. The transcript of the hearing held by the Supreme Court indicates that the parties did not brief the constitutional issues, and that counsel for Bell expressly informed the Supreme Court that he would

like to address those issues but could not do so unless counsel for Defendants agreed that it would not constitute a waiver of Bell's *England* reservation. In other words, Bell attempted to reserve his constitutional claims for decision by this Court, even though there is absolutely no indication the New Mexico Supreme Court would have refused to hear and decide those claims. To the contrary, the Supreme Court inquired about the constitutional issue, but Bell's counsel politely refused to address it in that forum.

The Court will not allow Bell to evade the normal process envisioned by *Feldman, Razatos,* and other well-established precedent. Counsel are not entitled to reserve constitutional challenges for the forum they believe to be most advantageous to their interest. Where a specific disciplinary action is initiated, the attorney facing that action is limited to defending that action in the state proceedings and then, if the defense is unsuccessful, requesting review by the United States Supreme Court. *Feldman; Phelps v. Kansas Supreme Court,* 662 F.2d 649, 651 (10th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982). During the state proceedings the attorney must raise all arguments, including constitutional arguments, against the discipline, or the arguments will be waived. The simple expedient of failing to raise a federal constitutional argument cannot be used to move that constitutional claim from the state system to the federal. In this case, Bell could have attempted to obtain the authority to run the questioned eight advertisements by making his constitutional arguments to the New Mexico Supreme Court. Having failed to do so, he cannot now ask this Court for the same relief he could have sought during the disciplinary proceedings.

Bell also argues that he was prevented from raising his constitutional arguments during the state proceedings, because the LAC and the Disciplinary Board both refused to consider his constitutional arguments.[4] The Court acknowledges that the

---

3. *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

4. The administrative process followed in cases such as this consists of an initial review by the LAC, during which the advertisement is accepted or rejected. If it is rejected, the LAC informs the attorney that continuing to run the advertisement

LAC refused to consider any constitutional issues raised by Bell, and that the disciplinary counsel who filed the charge against Bell stated her opinion that it would be inappropriate for an administrative agency to rule on the constitutionality of the Supreme Court's rules. The situation at the Disciplinary Board level was more complicated, because Bell filed his *England* reservation and then avoided raising any constitutional issues in furtherance of his attempt to preserve those issues for decision by this Court. It appears that the Board was willing to at least allow Bell to introduce evidence relevant to his constitutional claims, but Bell declined the opportunity. In any event, it is clear that Bell could have raised his constitutional claims in the New Mexico Supreme Court and requested a chance to adduce evidence relevant to those claims, but he failed to do so. Thus Bell was not prevented from raising his constitutional arguments during the state proceedings. *Cf. Hirsh v. Justices of the Supreme Court of the State of California*, 67 F.3d 708, 713 (9th Cir.1995) (even though administrative entity could not consider federal constitutional claims, discretionary review of entity's decision by state supreme court provided adequate opportunity to raise such claims).

Bell's final argument is that the New Mexico Supreme Court's decision was not based on constitutional grounds, but solely on the fact that its rules had been violated. This fact is apparent, since Bell never raised his constitutional claims with the Supreme Court. However, it does not change the result in this case. As discussed above, a party to a disciplinary proceeding cannot circumvent the *Feldman* doctrine by failing or refusing to raise constitutional arguments during the state proceedings and then coming to federal court to request a decision on those issues. To the extent Bell may still wish to obtain a constitutional ruling on the eight advertisements at issue here, he is limited to whatever remedies the state disciplinary system may provide.

## Eleven Advertisements Rejected by LAC But Not Part of Disciplinary Proceeding

The procedural status of the remaining eleven advertisements is simple—they remain in limbo. Bell submitted them to the LAC for review, the LAC found they violate the advertising rules, and they are not being published, nor have they been the subject of any disciplinary proceedings. After the LAC rejects an advertisement there is no explicit provision in the advertising rules allowing for risk-free review of the LAC's action. Instead, one interpretation of the rules would require Bell to undergo a substantial risk of further (and potentially more severe) discipline in order to obtain further review of the LAC's decisions concerning his advertisements. He would have to disseminate the ads, in defiance of the LAC's rejection of those ads, and then defend against any disciplinary proceeding that might result. Bell seeks to avoid this risk by asking this Court to declare that he has a right to disseminate the advertisements without fear of discipline. Since there is currently no state proceeding pending, no clear issue of *Younger* abstention is present with respect to these advertisements. Similarly, since there has been no judicial decision concerning the advertisements, the *Feldman* doctrine may not be directly implicated.

At this juncture, then, the only avenue of review available to Bell may be open defiance of the LAC's rejection, followed by a substantial risk of disciplinary action. This fact militates in favor of this Court asserting jurisdiction over Bell's claims. *See American Civil Liberties Union v. The Florida Bar*, 999 F.2d 1486, 1492 (11th Cir.1993) (plaintiff who wishes to engage in allegedly protected speech or conduct does not have to expose himself to enforcement to be able to challenge the law). On first blush, it might appear unfair to require Bell, who has already been subjected to discipline under the advertising rules, to run a risk of further discipline.

---

may lead to professional discipline. NMRA 16–707(G). If the attorney ignores the LAC's notice, a charge may be filed with the Disciplinary Board, the next level of administrative review. NMRA 17–309. The Board appoints a hearing officer or hearing committee to take evidence and make findings of fact, conclusions, and recommendations to the full Board. NMRA 17–309, –313, –314. The Board then considers the issues and arrives at a decision. That decision, in turn, is subject to discretionary review by the New Mexico Supreme Court. NMRA 17–316.

Counseling against an assumption of jurisdiction, however, is the historically powerful preference, if not requirement, that state supreme courts be allowed to regulate their state bar membership without undue interference from federal courts. *See, e.g., Feldman,* 460 U.S. at 484, fn. 16 (noting strength of state interest in regulating state bar); *Fieger v. Thomas,* 74 F.3d 740, 745 (6th Cir.1996) (regulating lawyer conduct is a fundamentally important state interest); *Peery v. Brakke,* 826 F.2d 740, 745 (8th Cir.1987) (supervision of bar and particularly attorney discipline is traditionally the sole responsibility of the state supreme court). Recognizing the strong state interests present in the context of professional disciplinary proceedings, including attorney discipline, federal courts have required that state remedies be exhausted before resort is had to a federal remedy. *See Massengale v. Oklahoma Bd. of Examiners in Optometry,* 30 F.3d 1325, 1330 (10th Cir.1994) (optometrist required to exhaust state administrative remedies; therefore, federal court lawsuit alleging violation of right to free speech properly dismissed by district court); *American Civil Liberties Union v. Bozardt,* 539 F.2d 340, 344–45 (4th Cir.) (attorney received advisory reprimand from disciplinary board; attorney would have to petition state supreme court to obtain review of board's decision; Fourth Circuit held that attorney would be required to exhaust her state remedies, including such petition, and federal district court therefore properly abstained from hearing lawsuit under *Younger*), *cert. denied,* 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976).[5]

The exhaustion of remedies doctrine is similar to the doctrine of abstention. *See McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 1085–86, 117 L.Ed.2d 291 (1992). It is a matter of judicial discretion, rather than jurisdiction. *Massengale,* 30 F.3d at 1328. In deciding whether to require Bell to exhaust his state remedies, then, this Court is required to balance Bell's interest in prompt access to a federal forum against the institutional interests favoring exhaustion. *McCarthy,* 503 U.S. at 146.

The factors to consider in deciding whether to require exhaustion of state remedies include the following: (1) whether requiring exhaustion will somehow impair the ability to subsequently obtain meaningful judicial review, for example where the administrative proceedings will take so long to resolve that it will be too late to prevent the threatened harm; (2) whether the state remedy is adequate; and (3) whether the state administrative proceedings are demonstrably biased against the party seeking to proceed in federal court. *Massengale.* The Court is satisfied that factors (1) and (3) are not present in this case. There is no indication that any delay incurred during the administrative process will impair subsequent judicial review of the administrative action. In fact, requiring exhaustion of Bell's state remedies will ensure that Bell obtains judicial review from the entity best suited to decide issues concerning the state bar—the New Mexico Supreme Court. In addition, although Bell claims the LAC is biased against him, there are two tiers of meaningful review beyond the LAC, and Bell has hardly demonstrated that either the Disciplinary Board or the New Mexico Supreme Court is biased against him.

The only factor about which the Court has serious concern is the adequacy of the remedy provided by the state process. This concern is not a result of any question about whether Bell's constitutional issues will be ignored in the state proceedings; the Court is satisfied that, at least at the Supreme Court level, Bell will be allowed to raise his

---

**5.** The fact that this case involves a § 1983 action, and that plaintiffs in such actions are often not required to exhaust their state remedies, does not militate against exhaustion in the present case. *Cf. Niles v. Lowe,* 407 F.Supp. 132 (D.Hawai'i 1976) (applying *Younger* abstention to case where disciplinary proceedings were pending). Where, as here, important state interests are involved and the administrative proceedings began before any substantial advancement took place in the federal action, the *Younger* doctrine will mandate exhaustion of the pending state proceedings. *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 628, fn. 2, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986). Similarly, where state proceedings are available even if not pending, and important state interests are concededly at stake, exhaustion should be required if appropriate under the circumstances. *See Mildner v. Gulotta,* 405 F.Supp. 182, 197 (E.D.N.Y.1975), *aff'd without opinion,* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976).

arguments and given the opportunity to make a sufficient factual record to support them. As the Court noted above, however, there is substantial doubt concerning the fairness of a procedure that would require Bell to risk further discipline in order to test the LAC's rulings. Other states have explicitly addressed this issue and provided various ways to allow risk-free constitutional challenges to attorney-advertising rules or rulings. *See, e.g., Iowa Supreme Court Bd. of Professional Ethics and Conduct v. Wherry*, 569 N.W.2d 822, 826 (Iowa 1997) (noting existence of safe-harbor administrative system for challenging advertising rules); *cf. Middlesex*, 457 U.S. at 430–31 (pointing out New Jersey's adoption of a rule allowing an aggrieved party in a disciplinary proceeding to seek interlocutory review of constitutional questions raised during the proceedings).

Mitigating the above concern is the Court's confidence that, if given the opportunity, the New Mexico attorney-advertising review process will provide Bell the risk-free avenue of challenge to which, in the Court's opinion, he is entitled. For example, the rules applicable to the Disciplinary Board state that New Mexico's Rules of Civil Procedure apply to Board proceedings, unless there is a conflict. NMRA 1998, 17–301(B). The civil-procedure rules, in turn, allow parties to bring declaratory-judgment actions. NMRA 1998, 1–057(A). There is no obvious reason why Bell could not bring a declaratory-judgment action before the Disciplinary Board, with subsequent review by the Supreme Court. *Cf. Re Felmeister*, 95 N.J. 431, 471 A.2d 775, 782 (1984). This would allow him to raise his constitutional challenges to the LAC's decisions without being forced to defy those decisions. Alternatively, Bell may be able to request relief directly from the Supreme Court, which has the ultimate authority over the state bar's administrative machinery.

Assuming that Bell will be allowed a risk-free avenue of challenge to the LAC's decisions, the Court finds that the interests favoring exhaustion far outweigh Bell's interests in obtaining immediate federal-court review of his claims. As the Court noted above, the operation and regulation of a state bar are peculiarly within the control of that state's supreme court. Federal case law has expressed a strong preference, if not an absolute requirement, that federal district courts remain on the sidelines in disputes over specific disciplinary actions taken in state bar proceedings. *See Feldman*, 460 U.S. at 486; *Razatos*. As counsel for Bell implicitly acknowledged during the hearing held on these pending motions, a failure to require exhaustion of available state remedies has the potential to embroil this Court to an unacceptable extent in the operations of the state bar. Specifically, when asked whether this Court is required to entertain a federal lawsuit any time the LAC acts in an allegedly unconstitutional manner in disapproving an advertisement, counsel for Bell replied that the Court's responsibility does indeed extend that far. Even if the Court has as much authority as Bell's counsel believes, it is not proper to exercise that authority without affording the state Supreme Court the opportunity to redress any valid constitutional concerns Bell may have. *See Sassower v. Mangano*, 927 F.Supp. 113, 119 (S.D.N.Y.1996) (*Feldman* doctrine bars not only claims involving direct review of state court discipline but also those claims that are inextricably intertwined with such proceedings).

Pursuant to the foregoing discussion, the Court will require Bell to attempt to exhaust his state remedies with respect to the eleven advertisements that have been rejected by the LAC. The attempt should include any constitutional arguments Bell may wish to raise in opposition to the LAC's actions. Should Bell be precluded from obtaining review of the LAC's decisions without incurring a risk of further discipline, the Court will revisit the issue of these advertisements.

**General Challenge to Ban on Testimonials and Endorsements**

■■■■■ Bell has raised a general attack on the advertising rules promulgated by the New Mexico Supreme Court, insofar as those rules impose an absolute ban on testimonials or endorsements in attorney advertisements. NMRA 1998, 16–701(A)(2). This is the type of claim that is recognized as clearly within this Court's jurisdiction. *See Feldman; Razatos; see also Revo v. Disciplinary Bd. of the Supreme Court for the State of New Mexico*, 106 F.3d 929 (10th Cir.) (case in

**1238**

which general challenge to one aspect of advertising rules was brought in federal district court), *cert. denied*, —— U.S. ——, 117 S.Ct. 2515, 138 L.Ed.2d 1017 (1997). Given that fact, there does not appear to be a good reason to require Bell to bring this general challenge in the same state administrative proceeding as his attacks on individual decisions made by the LAC, which will address entirely different issues. The Court will therefore not require Bell to exhaust any state remedies he may have concerning this general challenge to the advertising rules.

Defendants argue that Bell's general challenges should be dismissed because they have been dealt with in a prior opinion issued by this Court and affirmed by the Tenth Circuit, *McDevitt v. Disciplinary Bd. of the Supreme Court for the State of New Mexico* (D.N.M. No. CIV 94–383). The *McDevitt* opinion, however, focused only on procedural challenges to the rules, such as the filing fee requirement for advertisements and the fact that the rules require submission of advertisements to the LAC concurrently with dissemination of the advertisements to the media that will publish them. *McDevitt* did not involve an attack on the substantive content of any of the rules, such as the ban on testimonials and endorsements that has been challenged by Bell in this case. Similarly, the case of *Texans Against Censorship v. State Bar of Texas*, 888 F.Supp. 1328 (E.D.Tex.1995), also relied on by Defendants, does not address a ban on testimonials or endorsements. Prior case law, therefore, does not resolve Bell's claims.

On the merits, it cannot be said as a matter of law that Bell's attack on the absolute ban on testimonials and endorsements fails to state a claim. Absolute bans on various types of attorney advertising have not fared well in the United States Supreme Court or other appellate courts. *See, e.g., Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988) (direct-mail advertising); *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) (illustrations in advertising, and advertising containing legal advice); *In re: R.M.J.*, 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982) (restrictions on mailing announcements); *Revo* (direct-mail advertisements sent to personal-injury victims and family members of wrongful-death victims). Instead, the Supreme Court and other courts have tended to require evidence supporting an assertion that a particular type of advertising is inherently misleading or otherwise deserving of being banned. *See, e.g., Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 626–29, 115 S.Ct. 2371, 2377–79, 132 L.Ed.2d 541 (1995) (discussing evidence amassed by bar in support of its limited temporal ban on some types of direct-mail advertising; comparing this evidence to the lack of similar evidence presented in other cases, such as *Shapero*, involving absolute bans); *Edenfield v. Fane*, 507 U.S. 761, 771, 113 S.Ct. 1792, 1800–01, 123 L.Ed.2d 543 (1993) (noting the lack of studies supporting the fear that in-person solicitation by certified public accountants would lead to overreaching or deception). As no such evidence has yet been introduced or considered by the Court in this case, Bell's general attack on the absolute ban on testimonials or endorsements will not be dismissed.

**General Attack on Concurrent–Submission Requirement**

■ Bell attacks the advertising rules because they require him to submit his advertisements to the LAC at the same time he sends them to the media which will publish them. NMRA 1998, 16–707(B). This Court upheld that requirement in *McDevitt*. Bell now argues, however, that the rule has been construed by the New Mexico Supreme Court to require submission of the advertisements to the LAC before they can actually be published, so the rule allows a prior restraint to occur. According to Bell, there is a "real possibility" that the LAC could disapprove of an advertisement before it is published, which he argues makes the rule unconstitutional. Bell's argument is based on the factual showing he intends to make, to the effect that when an advertisement is sent to a media outlet such as a television station or newspaper, it is not published immediately. Instead, there is generally a lag time between the media's receipt of the advertisement and its publication. This lag time, according to Bell, establishes that this Court's assumption in *McDevitt*, to the effect that the submission requirement does not constitute a prior restraint, is no longer true. In

Bell's opinion any LAC disapproval that is received prior to the time the advertisement in question is first run constitutes an informal prior restraint, even if the LAC has no power to actually forbid dissemination of the advertisement, due to the fear of discipline that could result if the advertisement continues to run.

The Court rejects this argument. The fact that the LAC could possibly act to disapprove an advertisement before it is published does not make the rule one of prior restraint. Just as it generally takes time to get an advertisement actually published, it also takes time to have the LAC act on the advertisements that have been submitted for its review. The advertisement must be reviewed, a meeting of the LAC held, and a letter sent to the attorney submitting the advertisement. Since the rule requires only simultaneous filing it much more likely the advertisement will air before the LAC acts on its content than vice versa. For now, this claim will be dismissed on the strength of *McDevitt.* If during discovery Bell uncovers evidence indicating that the procedures required by the rule actually do rise to the level of a prior restraint, the Court may reconsider the issue.

### Motion for Preliminary Injunction

Bell's motion for a preliminary injunction with respect to any of the twenty-one individual advertisements at issue in this case will obviously be denied, based on the foregoing discussion. As to the general attack on the absolute ban on testimonials and endorsements, the Court notes that discovery has been stayed pending a decision on the motion to dismiss. Therefore, no evidence has been submitted concerning the merits of the ban, which means the Court has no information about a crucial factor that must be considered in preliminary-injunction cases—the likelihood of eventual success on the merits. The discovery ban is therefore dissolved so that the parties may develop the factual predicate to present this issue to the Court.

### Motion for Preliminary Approval of Two Attorneys

Plaintiff has asked the Court for preliminary approval allowing two attorneys to work on the case, apparently to pave the way for possible future attorney-fees requests. At the hearing, the Court indicated this request was premature. The request will therefore be denied without prejudice.

**Plaintiff's Motion to Strike Defendants' Supplemental Brief on the Issue of Bell's Opportunities to Raise Constitutional Issues in State Court**

In ruling on the pending motions, the Court reviewed only the factual material submitted by the parties after the hearing and did not consider the additional legal argument submitted by Defendants. This motion is therefore moot and will be denied.

### Conclusion

As discussed above, the Court will require Bell to pursue his challenges to individual decisions of the LAC in the state system, while allowing him to pursue his general challenge to the advertising rules in this Court. This result is in accord with the principles set out in *Feldman* and *Razatos,* which are binding on this Court. The result also seems to be a fair resolution of the tension between ensuring that Bell's federal constitutional rights are respected and that the New Mexico Supreme Court is accorded the deference it deserves as the ultimate regulatory authority over the practicing members of the New Mexico bar.

An Order in accordance with this Memorandum Opinion will issue.