OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



February 20, 2001

The Honorable Florence Shapiro
Chair, State Affairs Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. JC-0342

Re: Whether the Texas State Board of Medical Examiners is authorized to adopt rules that prohibit all physician advertising containing testimonials (RQ-0265-JC)

Dear Senator Shapiro:

Section 101.201 of the Occupations Code prohibits health profession advertising that is false, misleading, deceptive, or not readily subject to verification and includes within this prohibited category any advertising containing a testimonial. *See* TEX. OCC. CODE ANN. § 101.201 (Vernon 2000). Section 153.002(a) of the Occupations Code prohibits the Texas State Board of Medical Examiners (the "Board") from adopting rules that restrict advertising by "person[s] regulated by the board except to prohibit false, misleading, or deceptive practices" by those regulated. *Id.* § 153.002(a). The Board has adopted rules that deem any advertisement that contains a testimonial to be false, deceptive, or misleading advertising. You ask whether the Board's rule in barring all testimonials violates section 153.002(a). We conclude in the negative because the legislature in section 101.201 of the Occupations Code has barred all testimonials from health profession advertising, deeming any such advertising containing a testimonial to be false, deceptive, or misleading. Such a legislative ban, however, will only withstand constitutional challenge if the state provides evidence supporting the assertion that testimonials are inherently misleading or otherwise deserving of being banned. We cannot predict whether a court would find section 101.201(b)(4) constitutional under this test.

Section 153.002(a) of the Occupations Code restricts the rules the Board may adopt with respect to advertising by providing that:

> The board may not adopt rules restricting advertising or competitive bidding by a person regulated by the board except to prohibit false, misleading, or deceptive practices by the person.

*Id.* § 153.002(a).

The Board has adopted rules dealing specifically with physician advertising that provide in relevant part that:

> No physician shall disseminate or cause the dissemination of any advertisement that is in any way false, deceptive, or misleading. Any advertisement shall be deemed by the Board to be false, deceptive, or misleading if it:
>
> (1)   contains material false claims or misrepresentations of material facts which cannot be substantiated; or
>
> . . . .
>
> (8)   *contains a testimonial*; or
>
> . . . .

25 Tex. Reg. 1497, 1498 (2000), *adopted* 25 Tex. Reg. 4348 (to be codified at 22 TEX. ADMIN. CODE § 164.3) (emphasis added). A "testimonial" under the Board's rules is "[a]n attestation or implied attestation to the competence of a physician's service or treatment" and includes "expressions of appreciation or esteem, a character reference, or a statement of benefits received."[1] *Id.* (to be codified at 22 TEX. ADMIN. CODE § 164.2(2)). In light of the section 153.002's restriction on Board advertising rules, you ask:

> Is the [Board] authorized to adopt rules which prohibit physician advertising containing a "testimonial" even if such "testimonial" is a true, accurate, nonmisleading and nondeceptive statement regarding services provided by the physician to a patient or a true, accurate, nonmisleading and nondeceptive statement reflecting the benefits the patient received from such medical treatment [?][2]

In essence, you ask whether the Board has exceeded its statutory authority in barring all testimonials. We conclude in the negative because while section 153.002 read in isolation may appear to preclude the Board from barring all testimonials, that is not the case when read together with section 101.201 of the Occupations Code. The Board's rules are adopted pursuant to sections 153.001 *and* 101.201 of the Occupations Code. Section 101.201 also prohibits false, misleading,

---

[1]Additionally, "[t]estimonials are not limited to patient comments but may also include comments from colleagues, friends, family, actors, models, fictional characters, or other persons or entities." 25 Tex. Reg. 1497, 1498 (2000), *adopted* 25 Tex. Reg. 4348 (to be codified at 22 TEX. ADMIN. CODE § 164.2(2)).

[2]Letter from Honorable Florence Shapiro, Chair, State Affairs Committee, Texas State Senate, to Susan D. Gusky, Chair, Opinion Committee, Office of the Attorney General at 1 (Aug. 9, 2000) (on file with Opinion Committee).

or deceptive advertising by health professionals and, more importantly, prohibits any advertising containing a testimonial. That section provides in relevant part that:

> (b)    False, misleading, or deceptive advertising or advertising not readily subject to verification includes advertising that:

> > (1) makes a material misrepresentation of fact or omits a fact necessary to make the statement as a whole not materially misleading;

> > . . . .

> > (4) contains a testimonial;

> > . . . .

TEX. OCC. CODE ANN. § 101.201(b)(1), (4) (Vernon 2000) (emphasis added).

A primary rule of statutory construction is that legislative enactments involving the same general subject matter and also possessing the same general purpose or purposes are considered to be and are construed to be in pari materia (like subject matter). *See Garrett v. Mercantile Nat'l Bank,*168 S.W.2d 636, 637 (Tex. 1943); *see also Calvert v. Fort Worth Nat'l Bank,* 356 S.W.2d 918, 921 (Tex. 1962). Section 153.002 and section 101.201 concern the same general subject matter, possess the same general purpose, and were enacted by the same legislature.[3] *See State ex rel. O'Connell,* 976 S.W.2d 902, 907 (Tex. App.–Dallas 1998, no pet.) ("rule of in pari materia applies with peculiar force to acts passed at same session of legislature"). We believe they must be read together: "Statutes in pari materia are to be taken, read and construed together, and effort should be made to harmonize, if possible so that they can stand together, and have concurrent efficacy." *Davis v. State,* 968 S.W.2d 368, 372 (Tex. Crim. App. 1998) (en banc). The Board's rule prohibiting all testimonials is authorized by and consistent with its statutory authority. *See Calvert,* 356 S.W.2d at 921 (well settled that statutes in pari materia are to be read and construed together in arriving at the legislature's intent).

A state "'agency can adopt only such rules as are authorized by and consistent with its statutory authority.'" *See R.R. Comm'n v. Lone Star Gas Co.,* 844 S.W.2d 679, 685 (Tex. 1992) (citation omitted). In considering the validity of a state agency rule, the determinative factor as to whether the agency has exceeded its authority is whether the rule is in harmony with the general objectives of the statute. *See Gerst v. Oak Cliff Sav. & Loan Ass'n,* 432 S.W.2d 702, 706 (Tex.

---

[3]Sections 101.201 and 153.002 were adopted by the 73d Legislature. *See* Act of May 26, 1993, 73d Leg., R.S., ch. 669, § 1.01, sec. 3(a), (b), 1993 Tex. Gen. Laws 2483, 2484 (adopting article 4512p, Revised Civil Statutes, predecessor to section 101.201); Act of May 30, 1993, 73d Leg., R.S., ch. 862, § 18, 1993 Tex. Gen. Laws 3374, 3388 (adopting art. 4495b, § 3.085, Revised Civil Statutes, predecessor to section 153.002).

1968). An agency rule that imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions is invalid. *See Hollywood Calling v. Pub. Util. Comm'n*, 805 S.W.2d 618, 620 (Tex. App.–Austin 1991, no writ).

The Board's physician advertisement rules are adopted pursuant to section 153.001 *and* section 101.201 of the Occupations Code. *See* 25 Tex. Reg. 1497 (2000), *adopted* 25 Tex. Reg. 4348 (to be codified at 22 TEX. ADMIN. CODE § 164.1). The Board is the state agency empowered to regulate the practice of medicine. *See* TEX. OCC. CODE ANN. § 152.001(Vernon 2000). Section 153.001 of the Occupations Code grants the Board broad rule-making authority. It expressly authorizes the Board to adopt rules as necessary to perform its duties, regulate the practice of medicine, and to enforce the Medical Practice Act, subtitle B of title 3 of the Occupations Code, chapters 151-165. *See id.* § 153.001. Under the Medical Practice Act, the Board is charged with taking disciplinary actions against prohibited physician practices, including the use of false, misleading, or deceptive advertising statements or statements regarding professional superiority or services that are not readily subject to verification. *See id.* §§ 164.051 (grounds for license denial or disciplinary action), .052(a)(6), (7) (prohibited practices, including false, misleading, or deceptive advertising statements); Act of May 25, 1999, 76th Leg., R.S., ch. 1271, § 3, sec. 3.08, 1999 Tex. Gen. Laws 4383, 4384 (amending former article 4495b, section 3.08, Revised Civil Statutes, predecessor to sections 164.051 and .052, without reference to repeal and codification of that article). The Medical Practice Act does not define or set out specifically what constitutes false, misleading, or deceptive advertising statements or professional superiority or service statements not readily subject to verification.

Chapter 101 of the Occupations Code, however, containing provisions applying to health professions generally, does. Section 101.201, like section 164.051, also prohibits "advertising that is false, misleading, deceptive, or not readily subject to verification," and deems advertising that contains a testimonial to be "false, misleading, deceptive, or not readily subject to verification." TEX. OCC. CODE ANN. § 101.201(a), (b)(4) (Vernon 2000). A violation of this section, among others, is grounds for revocation or denial of a license by the appropriate health agency, *see id.* § 101.204, which with respect to physicians, is the Board. *See id.* §§ 152.001 (Board to regulate practice of medicine); 164.051 (grounds for license denial or disciplinary action); 164.052(a)(6), (7) (prohibited practices, including false, misleading, or deceptive advertising statements, or statements not readily subject to verification). Thus, the *legislature* in section 101.201(b)(4) has deemed a health profession advertisement containing a testimonial to be false, deceptive, or misleading and has prohibited such advertising.[4]

---

[4]Other regulatory bodies have determined that testimonials are inherently misleading. *See, e.g., Fla. Bar: In re Rules Regulating Fla. Bar–Adver. Issues*, 571 So. 2d 451, 461 (Fla. 1990) (commentary explaining that endorsement or testimonials are prohibited as false, misleading, deceptive or unfair communication because "they are inherently misleading to a layman untrained in the law" and "[p]otential clients are likely to infer from the testimonial that the lawyer will reach similar results in future cases" ); *Minn. Acad. of Chiropractors, Inc. v. Minn. State Bd. of Chiropractic Exam'rs*, 169 N.W.2d 26, 30 (Minn. 1969) ("Whether true or false, to the extent that the testimonial may be construed as a promise to cure, it is declared by statute to be fraudulent and misleading.").

In short, the Board's rule prohibiting and deeming any advertising containing a testimonial to be false, misleading, or deceptive advertising is consistent with the Board's authority to prevent the unauthorized practice of medicine, including the use of false, misleading, or deceptive advertising. Because the rule simply reiterates the legislative prohibition against the use of all testimonials, it imposes no additional burdens, conditions, or restrictions in excess of or inconsistent with the Board's statutory authority to regulate the practice of medicine.

You do not ask about the legislature's authority to enact section 101.201(b)(4) of the Occupations Code prohibiting the use of all testimonials in health profession advertising. Nor has the Board or another health profession agency briefed this issue. Nonetheless, we note that professional advertising as a form of commercial speech is entitled to a measure of First Amendment protection. *See Florida Bar v. Went for It, Inc.*, 515 U.S. 618, 623 (1995) ("'[C]ommercial speech [enjoys] a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values,' and is subject to 'modes of regulation that might be impermissible in the realm of noncommerical expression.'" quoting *Bd. of Trs. v. Fox*, 492 U.S. 469, 477 (1989)). Restrictions on commercial speech are subject to an "intermediate scrutiny" and are analyzed under the framework set out in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). *See, e.g., Went For It*, 515 U.S. at 623-24; *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 183 (1999).

Under *Central Hudson*, the government may freely regulate commercial speech that concerns unlawful activity or is misleading. *See Central Hudson*, 447 U.S. 557; *see also Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638 (1985) (state may prohibit commercial speech that is false, deceptive, or misleading, or that proposes illegal transaction); *In re R. M. J.*, 455 U.S. 191, 202 (1982) (states may prohibit inherently misleading speech entirely). Commercial speech that falls into neither of these categories may be regulated if the government satisfies a test consisting of three related prongs: (1) the government must assert a substantial interest in support of its regulation; (2) the government must demonstrate that the restriction on commercial speech directly and materially advances the governmental interest asserted; and (3) the regulation must be no more extensive than is necessary to serve the governmental interest. *See Went For It*, 515 U.S. at 624; *Greater New Orleans Broad.*, 527 U.S. at 183 (citing *Central Hudson*, 447 U.S. at 566). Under this analysis, a state asserting that a restriction directly and materially advances a governmental interest (under the second prong) must demonstrate that the harms it recites are real and that its restrictions will in fact alleviate them to a material degree. *Greater New Orleans Broad.*, 527 U.S. at 188 (citing *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993)).

While no court has ruled on the constitutionality of an absolute ban on testimonials in health profession advertising, the New Mexico federal district court in *Bell v. Legal Advertising Committee*, 998 F. Supp. 1231 (D. N.M. 1998), has indicated that an absolute ban on testimonials in the context of legal advertising will only be upheld against a constitutional challenge if the state provides evidence supporting the assertion that such testimonials are inherently misleading or otherwise deserving of being banned. *See Bell v. Legal Adver. Comm.*, 998 F. Supp. at 1237 (refusing to dismiss, for failure to state a claim, constitutional attack on New Mexico's lawyer advertising rules

banning testimonials); *see also Went For It*, 515 U.S. at 626-29 (discussing statistical and anecdotal evidence amassed by Florida Bar supporting its limited ban on certain direct-mail attorney advertising; comparing this evidence to lack of similar evidence in other cases involving absolute bans); *Texans Against Censorship, Inc. v. State Bar of Tex.*, 888 F. Supp. 1328, 1349 (E.D. Tex. 1995), *aff'd mem*, 100 F.3d 953 (5th Cir. 1996) (discussing Texas Bar hearing transcripts supporting more restrictive amended legal advertising and solicitation rules).

We cannot, however, predict whether a court confronted with the question would find section 101.201(b)(4) of the Occupations Code constitutional. As indicated earlier, neither the Board or another health profession agency has addressed the constitutionality of section 101.201(b)(4) of the Occupations Code, or had the opportunity to provide evidence supporting the testimonial ban. Moreover, because this office does not take or weigh evidence,[5] we could not determine whether the state had met its burden under the *Bell* test even if such evidence were proffered. Finally, we note that while a statute may be found to be facially infirm on the ground of overbreadth in the context of speech protected by the First Amendment, *see New York State Club Ass'n v. City of New York*, 487 U.S. 1, 11 (1988) (citing *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 797-98 (1984)); *Louisiana Debating and Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1492-93 (5th Cir. 1995), the overbreadth doctrine does not apply to commercial speech, *see Bd. of Trs. v. Fox*, 492 U.S. 469, 481 (1989); *Texans Against Censorship*, 888 F. Supp. at 1368; *see generally* 16A AM. JUR. 2D *Constitutional Law* §§ 413, 480 (1998 & Supp. 2000). Thus, the doctrine would apply here only to the extent that section 101.201(b)(4) were found to reach noncommercial speech. *See Texans Against Censorship*, 888 F. Supp. at 1341 n.15, 1368. Section 101.201(b)(4) on its face deals only with health profession advertising, a form of commercial speech.

---

[5]*See* Tex. Att'y Gen. Op. Nos. JC-0291(2000) at 10 ("This office, which does not find facts . . . ."); JC-0020 (1999) at 2 ("[I]nvestigation and resolution of fact questions . . . cannot be done in the opinion process."); M-187 (1968) at 3 ("[T]his office is without authority to make . . . factual determinations.").

## S U M M A R Y

The Texas Legislature has authorized the Texas State Board of Medical Examiners to adopt rules that prohibit use of all testimonials in physician advertising by deeming any health profession advertising containing a testimonial to be false, deceptive, or misleading advertising in section 101.201(b)(4) of the Occupations Code. Such a legislative ban, however, will only withstand constitutional challenge if the state provides evidence supporting the assertion that testimonials are inherently misleading or otherwise deserving of being banned. This office cannot predict whether a court would find section 101.201(b)(4) constitutional under this test.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General - Opinion Committee